UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                        :

MICHAEL NIGRO,                         :

                    Plaintiff,       :

                                     :          19-CV-2369 (JMF)

          -v-                     :

                                     :          <u>OPINION AND ORDER</u>

THE CITY OF NEW YORK et al.,       :

                                   :

                  Defendants.    :

--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Michael Nigro, a professional photographer, journalist, and filmmaker, brings claims against the City of New York (the "City") and five officers from the New York City Police Department ("NYPD"), relating to his arrest during a protest against then-presidential candidate Donald J. Trump on March 19, 2016.  Nigro alleges, among other things, that he was arrested without probable cause and in retaliation for his prior photography.  Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss.  *See* ECF No. 48 ("Motion").  Although Nigro's allegations are troubling and several of his claims would be sufficient to survive a motion to dismiss under *current* law, the law as it existed at the time of Nigro's arrest compels the Court to grant Defendants' motion on all claims save one: a failure-to-train claim against the City.  Accordingly, and for the reasons that follow, Defendants' motion is granted except as to that one claim.

**BACKGROUND**

The following relevant facts, drawn from the Second Amended Complaint

("Complaint"), *see* ECF No. 43 ("SAC"), are taken as true and construed in the light most

favorable to Nigro.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Nigro is an award-winning photographer, journalist, and filmmaker who frequently

reports on protests and documents incidents of police brutality.  *See* SAC ¶¶ 2, 40-42.  On March

19, 2016, Nigro was photographing a large-scale protest in New York City against then-

presidential candidate Donald J. Trump.  *See id*. ¶¶ 3-4.  Officers from the NYPD, including

members of its Strategic Response Group ("SRG"), were deployed at the event.  *See id*. ¶ 49.

Following a noontime rally at Columbus Circle, Nigro and the protesters marched southbound

through the middle of Manhattan.  *See id*. ¶¶ 48, 50-56.  At one point between Fifth and Madison

Avenues, Nigro stood in the middle of 57th Street and captured a "striking image" depicting a

wall of NYPD officers — including Defendants Deputy Inspector Andrew Lombardo, Police

Inspector John D'Adamo, and Police Chief James McNamara — walking towards him.  *See id*.

¶ 51-52 (photograph timestamped 13:46:50).  The image — which is included in Nigro's

Complaint — also shows "[s]everal other photojournalists in the street" with "the bulk of the

protesters . . . marching on the sidewalk."  *Id*. ¶ 51.

Seconds later, Nigro moved onto or near the 57th Street sidewalk, where he took another

image of Deputy Inspector Lombardo, aided by an SRG Captain and another SRG Officer,

arresting a photographer.  *See id*. ¶ 53 (photograph timestamped 13:47:07).  Almost immediately

thereafter, Nigro took two more pictures: one of Deputy Inspector Lombardo, feet away, staring

directly at Nigro and his camera, *see id*. ¶ 57 (photograph timestamped 13:47:26); and the other

of Deputy Inspector Lombardo speaking into his radio while another photographer stood nearby

in the street, *see id.* ¶ 58 (photograph timestamped 13:47:46).  Approximately one minute later, as Nigro and the protesters banked right and moved southbound along the Madison Avenue sidewalk, Deputy Inspector Lombardo ignored the photographer standing in the street, cut through a mass of people, and grabbed Nigro by the neck.  *See id.* ¶ 59.  With the assistance of NYPD Officer Joseph Aniano, also a Defendant here, Deputy Inspector Lombardo dragged Nigro from the sidewalk into the street and placed him under arrest.  *See id.* ¶¶ 3-6, 59.  Nigro was transported to One Police Plaza, more than five miles away from the protest, where he was held in NYPD custody for approximately six hours before he was released and charged with disorderly conduct and jaywalking.  *See id.* ¶¶ 82-83; ECF No. 55-1, at 2.  At a hearing held on May 2, 2016, Nigro was granted an adjournment in contemplation of dismissal ("ACD").  *See* SAC ¶ 91.  The charges were eventually dismissed on November 1, 2016.  *See id.*

Significantly, the March 19, 2016 incident was not Nigro's first encounter with Deputy Inspector Lombardo.  On April 29, 2015, Nigro photographed Deputy Inspector Lombardo at a large protest, "pointing aggressively at a Black man standing before him with his baton raised overhead."  *Id.* ¶ 42.  The photograph was featured in Nigro's "Escape from Freedom" series and featured on the website of a global association dedicated to the arts.  *Id.*  Although Deputy Inspector Lombardo did not arrest Nigro then, Nigro alleges that members of an activist group called Copwatch have "relayed" to him that Deputy Inspector Lombardo "had mentioned Plaintiff and that his arrest was a targeted one."  *Id.* ¶ 179.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Second Amended Complaint as true and draw all reasonable inferences in Nigro's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124

(2d Cir. 2008) (per curiam).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## DISCUSSION

Nigro's principal claims, brought pursuant to 42 U.S.C. § 1983, are for false arrest (against Deputy Inspector Lombardo and Officer Aniano), retaliatory arrest in violation of the First Amendment (against Deputy Inspector Lombardo), violation of the freedom of the press (against all Defendants), and violation of his right to a fair trial (against Deputy Inspector Lombardo and Officer Aniano).  In addition, he brings a claim for deliberate indifference against the City and the supervising NYPD officers and a claim of municipal liability, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City.  The Court will address each claim in turn.

## A.  False Arrest and Retaliatory Arrest Claims

Nigro's false arrest claim fails as a matter of law if there was probable cause to arrest him for an offense.  *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014).  Probable cause to arrest exists if an arresting officer has actual "knowledge or reasonably trustworthy information

of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A court should consider the "totality of the circumstances" in evaluating whether the "facts available to the officer at the time of arrest" meet that bar. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks omitted). Significantly, it is enough that probable cause existed for some offense; that is, it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *accord Figueroa v. Mazza*, 825 F.3d 89, 99-100 (2d Cir. 2016).  Moreover, even in the absence of probable cause, a police officer is entitled to qualified immunity if the probable cause determination was objectively reasonable — that is, whether there was "arguable" probable cause to arrest.  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

Applying these standards and binding Supreme Court and Second Circuit precedent, the Court is compelled to dismiss Nigro's false arrest claim.  New York Vehicle and Traffic Law ("VTL") §1156(a), the jaywalking statute, provides that, "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."  Critically, "[a] violation of this provision does not require the presence of traffic or an intent to obstruct it, but rather 'permit[s] law enforcement to restrict pedestrian traffic to sidewalks even where they are simultaneously diverting vehicular traffic.'"  *Abujayyab v. City of New York*, No. 15 CIV. 10080 (NRB), 2018 WL 3978122, at *10 (S.D.N.Y. Aug. 20, 2018) (quoting *Roper v. City of New York*, No. 15-CV-8899 (PAE), 2017 WL 2483813, at *4 (S.D.N.Y. June 7, 2017)).  And although arrests for jaywalking may be rare as an empirical matter, they are permitted under New York law, *see id.* (citing authorities); *see also* N.Y. Veh. &

Traf. Law § 155 ("For purposes of arrest without a warrant, . . . a traffic infraction shall be deemed an offense."), and, by extension, the Fourth Amendment, *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Here, Nigro's own Complaint makes plain that there was probable cause — or, at a minimum, arguable probable cause — to arrest him for jaywalking.  Indeed, his "striking" photograph of NYPD officers walking down 57th Street (which appears in the Complaint) confirms that, shortly before his arrest, he stood in the middle of the street.  *See* SAC ¶ 51; *see id.* ¶ 53 (depicting a photograph taken only seventeen seconds later of another photographer's arrest, making clear that Nigro was not in a crosswalk); *see also* ECF No. 54 ("Pl.'s Opp'n"), at 4 (acknowledging that the Complaint "indicates that Plaintiff" was "*in the street, then left the street* and followed the sidewalk to the intersection where he was arrested" (emphasis added)). Moreover, when he did so, he would have been visible to Officer D'Adamo and Deputy Inspector Lombardo, who are depicted in the photograph in the front row center and third row center, respectively, of the oncoming wall of NYPD officers.  *See id.* ¶¶ 51-52.  It follows that they had probable cause — or, at a minimum, arguable probable cause — to arrest Nigro and that his false arrest claim must be dismissed.  *See, e.g.*, *Roper*, 2017 WL 2483813, at *3-4 (dismissing a false arrest claim brought by protestors on the ground that there was probable cause to arrest for jaywalking); *see also Abujayyab*, 2018 WL 3978122, at *10 (dismissing a false arrest claim brought by protestors on summary judgment based on the ground that there

was probable cause to arrest for jaywalking); *Holmes v. City of New York*, No. 14-CV-5253 (LTS) (SDA), 2018 WL 1604800, at *3 (S.D.N.Y. Mar. 29, 2018) (same).[1]

Nigro's claim of retaliatory arrest in violation of the First Amendment is more complicated, if only because the Supreme Court held last year that probable cause does not defeat such a claim "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). In justifying this exception to the general rule that probable cause defeats a retaliatory arrest claim, the Court noted the broad discretion of law enforcement officers to arrest "for 'even a very minor criminal offense.'" *Id.* (quoting *Atwater*, 532 U.S. at 344-45). Notably, the Court then singled out jaywalking by way of example: "[A]t many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id.*

Based on the allegations in the Complaint, Nigro's retaliatory arrest claim would seem to fall squarely within the *Nieves* exception. *See* SAC ¶¶ 200-11. The problem for Nigro is that the *Nieves* exception was not clearly established at the time of his arrest in 2016. To the contrary, until *Nieves*, it was clearly established — at least in this Circuit — that probable cause defeated all claims of retaliatory arrest. *See Abeyta v. City of New York,* 588 F. App'x 24, 25 (2d Cir. 2014) (summary order); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012); *Mangino v. Inc.*

---

[1]     In light of that conclusion, the Court need not and does not reach Defendants' argument that there was probable cause to arrest Nigro for two other offenses.

*Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015); *Mozzochi v. Borden*, 959 F.2d 1174, 1180

(2d Cir. 1992); *Grant v. Am. Soc'y for the Prevention of Cruelty to Animals*, No. 16-CV-2765

(ER), 2017 WL 1229737, at *8 (S.D.N.Y. Mar. 31, 2017); *see also Nieves*, 139 S. Ct. at 1722-23

(discussing the law prior to 2019); *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (declining to

resolve the constitutional question on the ground that the prohibition on retaliatory arrest even in

the presence of probable cause was not clearly established in 2006).  Under well-established law,

therefore, Defendants are entitled to qualified immunity with respect to Nigro's retaliatory arrest

claim, and it must be dismissed.  *See Reichle*, 566 U.S. at 664; *Aschcroft v. al-Kidd*, 563 U.S.

731, 735 (2011) (holding that a law enforcement officer is entitled to qualified immunity unless

he violated a statutory or constitutional right that "was 'clearly established' *at the time of the*

*challenged conduct*" (emphasis added)); *accord Booker v. Graham*, — F.3d —, No. 18-739-pr,

2020 WL 5103845, at *3 (2d Cir. Aug. 31, 2020).[2]

## B.  Freedom of the Press Claim

Next, Nigro brings a claim for violation of the freedom of the press.  A plaintiff states

such a claim if he pleads that "he or other members of the press were denied equal access to

spaces to which the public was given access; or, alternatively, that Defendants provided unequal

access to the scene to particular journalists on the basis of the content of their speech or for

arbitrary reasons."  *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 260 (S.D.N.Y. 2019).  Nigro fails

---

[2]       In his memorandum of law, Nigro argues for the first time that he has a valid equal
protection claim based on the selective enforcement of VTL § 1156(a).  *See* Pl.'s Opp'n 5.  It is
well established, however, that a party may not amend his pleadings through motion papers.  *See,*
*e.g.*, *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 WL
5416498, at *8 (S.D.N.Y. Sept. 28, 2016) (citing *Enzo Biochem, Inc. v. Amersham PLC*, 981 F.
Supp. 2d 217, 223 (S.D.N.Y. 2013)).  In any event, the gravamen of such a claim is that
Defendants selectively arrested Nigro on the basis of his First Amendment activities.  That is
merely another way of stating a First Amendment retaliatory arrest claim.

to plead either.  Nigro primarily argues that he was denied equal access to the public sidewalk.
*See* Pl.'s Opp'n 9.  In doing so, however, he ignores his own Complaint, which, as discussed,
confirms that he was validly arrested because he was in the middle of a six-lane street.  As his
photographs make plain, only Nigro and other photojournalists (and the NYPD officers) were on
57th Street; the "bulk of protesters [were] marching on the sidewalk."  SAC ¶ 51.  And as Nigro
himself notes, as he was being arrested, Deputy Inspector Lombardo "instructed certain officers
to push people back onto the sidewalk," *id*. ¶ 63, meaning that no one, press or otherwise, was
allowed to be on the street.  Nigro, in an attempt to establish a content-based deprivation, also
alleges that Deputy Inspector Lombardo ignored another photographer standing in the street in
favor of arresting him.  SAC ¶¶ 58-59.  But Nigro's own photograph (also included in the
Complaint) makes plain that that photographer was standing near the crosswalk, not in the
middle of the street.  *See id*. ¶ 59.  As such, Deputy Inspector Lombardo's decision to arrest
Nigro instead of anyone else "was more likely explained by . . . lawful, . . . behavior," *Iqbal*, 129
S. Ct. at 1937 (discussing *Twombly*), rather than animus toward Nigro's First Amendment rights.
Accordingly, Nigro's freedom of the press claim must be and is dismissed.

**C.  Fair Trial Claim**

Next, the Court turns to Nigro's fair trial claim.  Traditionally, to support a Section 1983
claim for deprivation of the right to a fair trial, a plaintiff needed only to plead and prove that "an
(1) investigating official (2) fabricate[d] evidence (3) that [wa]s likely to influence a jury's
verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a
deprivation of life, liberty, or property as a result."  *Garnett v. Undercover Officer C0039,* 838
F.3d 265, 279 (2d Cir. 2016); *see also Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123, 130 (2d
Cir. 1997).  In the wake of *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019), however, a

plaintiff must also plead that his prosecution ended in a favorable termination. Following *McDonough*, district courts in this Circuit have grappled with whether an ACD constitutes a favorable termination in the context of a fair trial claim or whether it precludes the claim altogether. *Compare Simon v. City of New York*, No. 16-CV-1017 (NGG) (RML), 2020 WL 1323114, at *5 (S.D.N.Y. Mar. 19, 2020), *with Daniels v. Taylor*, No. 18-CV-3717 (RA), 2020 WL 1165836, at *5 (S.D.N.Y. Mar. 11, 2020). The Court need not jump into that fray, however, because even if Nigro's ACD sufficed, his claims fall short on the final element. Nigro alleges that Defendants fabricated evidence when, in their charging documents, they claimed Nigro was in the street "block[ing] vehicle traffic." SAC ¶ 250. As noted, however, Nigro's own photographs reveal that there was probable cause for his arrest and prosecution — at least for jaywalking, if not for obstructing vehicle traffic. Accordingly, even assuming that Defendants submitted false information to prosecutors, Nigro cannot show that the submission was "likely to influence a jury's verdict." *Garnett*, 838 F.3d at 279. Accordingly, the fair trial claim must be and is dismissed.

### D. Deliberate Indifference and *Monell* Claims

Finally, Nigro brings a deliberate indifference claim against the NYPD supervisory officers and the City based on Deputy Inspector Lombardo's conduct and a *Monell* claim against the City predicated on two theories: first, that the City has a policy and practice of arresting people in retaliation for their reporting on police activity and, second, that the City failed to properly train police officers on the rights of the media. *See* SAC ¶¶ 216.

With the exception of the retaliatory arrest claim against the City, these claims are easily dismissed. First, to the extent that Nigro fails to allege an underlying constitutional violation, his deliberate indifference and *Monell* claims also fail. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d

Cir. 2002) ("[A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury."); *Lanning v. City of Glens Falls*, 908 F.3d 19, 30 (2d Cir. 2018) ("Because [petitioner] has not plausibly alleged an underlying constitutional violation, his *Monell* claims against the municipal defendants necessarily fail."); *accord City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Accordingly, Nigro's deliberate indifference and *Monell* claims premised on the alleged false arrest and the alleged violations of his rights to a fair trial and free press must be and are dismissed.  Relatedly, Nigro's supervisory liability claim premised on the alleged retaliatory arrest is dismissed because the supervisory Defendants are also entitled to qualified immunity.  *See Poe*, 282 F.3d at 134 (noting that "to lay the predicate for demonstrating that [the supervisor] lacked qualified immunity," a plaintiff must show that "both laws were clearly established" — that is, "the law violated by [the supervisee] *and* the supervisory liability doctrine under which [the plaintiff] wishes to hold [the supervisor] liable" (emphasis added)).

Nigro's other *Monell* claims are more complicated, however, because qualified immunity does not extend to municipalities.  *See, e.g.*, *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013) ("[T]he entitlement of the individual municipal actors to qualified immunity because at the time of their actions there was no clear law or precedent warning them that their conduct would violate federal law is also irrelevant to the liability of the municipality.").  "Municipalities are held liable if they adopt customs or policies that violate federal law and result in tortious violation of a plaintiff's rights, regardless of whether it was clear at the time of the adoption of the policy or at the time of the tortious conduct that such conduct would violate the plaintiff's

rights."  *Id.*  Moreover, a plaintiff "need not prove the absence of probable cause to maintain a

claim of retaliatory arrest against the City."  *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct.

1945, 1955 (2018).  Thus, Nigro's *Monell* claims against the City — predicated on the City's

alleged policy and practice of arresting people in retaliation for reporting on police activity and

its failure to properly train its officers on the rights of the media — require additional analysis.

Nigro's *Monell* claim based on the first theory — that the City has a policy and practice

of arresting people in retaliation for reporting on police activity — fails as a matter of law.  In

particular, Nigro fails to plausibly allege that the City has a pattern that is "so persistent and

widespread as to practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61

(2011).  Nigro cites only a handful of incidents, most of which occurred in 2011 and 2012, in

which NYPD officers "interfered with the ability of journalists and other individuals to

document interactions between the public and police officers."  Pl.'s Opp'n 23; *see* SAC ¶¶ 155-

67, 217.  But few, if any, of these incidents involved claims of retaliatory arrest or are alleged to

have resulted in a lawsuit or otherwise formal complaint.  *See, e.g.*, *Marom v. City of New York*,

No. 15-CV-2017 (PKC), 2016 WL 916424, at *21 (S.D.N.Y. Mar. 7, 2016) (dismissing a *Monell*

claim where the plaintiffs "fail[ed] to assert which — if any — of those lawsuits led to findings

of liability against the City for false arrests, First Amendment retaliatory arrests, or excessive

force"); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *17

(S.D.N.Y. Mar. 26, 2015) (collecting cases where the plaintiff had failed to plead a widespread

practice based on catalogue of lawsuits).  Nigro also points to a report published in June 2017

identifying ninety-six "substantiated" cases of police interference with civilians recording police

activity between January 1, 2014 and December 31, 2016.  SAC ¶ 170.  But Nigro does not

identify what fraction of these cases concerned retaliatory arrests or whether they led to findings

of liability against the City.  *See, e.g.*, *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 383 (S.D.N.Y. 2015) (holding that a plaintiff alleging forty-four arrests over fifteen days did not establish a widespread practice because the plaintiff did "not allege the number of journalists covering the protests over the 15-day period or that the proportion of journalists arrested was greater than the proportion of people arrested within the general protester population").  In any event, ninety-six incidents over two years is not, without more, enough to establish that the City had a policy or practice of retaliating against the media at the time of Nigro's arrest.  *See, e.g.*, *An v. City of New York*, 230 F. Supp. 3d 224, 230 (S.D.N.Y. 2017).

By contrast, Nigro raises a plausible failure-to-train claim.  To state a claim for municipal liability against the City on that theory, a plaintiff must demonstrate a "direct causal link between" the alleged failure to train and the constitutional deprivation.  *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012).  Further, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Connick*, 563 U.S. at 61 (internal quotation marks omitted).  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Id.* (internal quotation marks omitted).  More specifically, it has three requirements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation.  Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.  Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks and citations omitted).  "Thus, when city policymakers are on actual or constructive notice that a

particular omission in their training program causes city employees to violate citizens'
constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose
to retain that program." *Connick*, 563 U.S. at 61.

Measured against these standards, Nigro's failure-to-train claim cannot be dismissed.
First, Nigro plausibly alleges that the NYPD's training on encounters with the media is
inadequate, consisting of nothing more than unenforced instructions in the NYPD Patrol Guide
and three FINEST Messages issued in 2011, 2014, and 2018 "to remind members of the service
of their obligations to cooperate with media representatives acting in a news-gathering capacity
at the scene of police incidents." SAC ¶¶ 112, 131, 151, 218 n.19.  And second, although
Nigro's citations to unrelated police encounters, letters, and post-hoc reports are not enough to
establish a widespread custom or practice of retaliating against the press and public, "they do
permit a plausible inference of deliberate indifference." *Case v. City of New York*, 233 F. Supp.
3d 372, 406 (S.D.N.Y. 2017).  In particular, the alleged incidents plausibly establish a history of
NYPD officers mishandling situations where the press is involved, resulting in the repeated
deprivation of constitutional rights.  Finally, contrary to Defendants' contentions, Nigro
adequately pleads that the failure to train caused his injuries.  *See, e.g.*, *Ferrari v. Cty. of Suffolk*,
790 F. Supp. 2d 34, 45 (E.D.N.Y. 2011).  In short, Nigro adequately pleads a failure-to-train
claim against the City, which means Defendants' motion on that score must be and is denied.

## CONCLUSION

Taking Nigro's allegations as true, as the Court must, his claims are troubling, raising the
specter of a police officer singling out a member of the media in retaliation for his First
Amendment activity.  Notably, it was precisely facts like those alleged here that caused the
Supreme Court concern in *Nieves* and prompted it to hold that where "a plaintiff presents

objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," a finding of probable cause does not defeat a retaliatory arrest claim.  139 S. Ct. at 1727.  As the Court observed, where "jaywalking is endemic but rarely results in arrest" — as is surely the case in most, if not all, of New York City — "it would seem insufficiently protective of First Amendment rights to dismiss" the retaliatory arrest claim of a person arrested for jaywalking after "vocally complaining about police conduct" merely because there was "probable cause for the arrest."  *Id.*

Yet, as discussed above, binding Supreme Court and Second Circuit precedent compel dismissal of all Nigro's claims save one: his failure-to-train claim against the City.  Nor is there a basis to grant Nigro leave to amend *sua sponte* to revive his dismissed claims.  Nigro has neither sought leave to amend nor suggested that he possesses any additional facts that could cure the defects in his Complaint.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc*., No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).  In any event, amendment would be futile given that Nigro's own Complaint and the photographs included therein show that there was either probable cause or arguable probable cause for his arrest.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("leav[ing] unaltered" prior case law on denial of leave to amend, including the rule that "leave may be denied where amendment would be futile").  Furthermore, Nigro was on notice of Defendants' arguments when he filed the Complaint in response to Defendants' original motion to dismiss, and Nigro was expressly warned that he would "not be given any further opportunity" to amend the Complaint.  *See* ECF Nos. 33, 36.  In light of these circumstances, the Court will

not *sua sponte* grant leave to amend.  *See, e.g., Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).

Accordingly, Defendants' motion to dismiss is GRANTED in part and DENIED in part. In particular, all of Nigro's claims except for his failure-to-train claim against the City are dismissed.  Unless and until the Court orders otherwise, the City shall file its answer to the remaining claim **within three weeks of the date of this Opinion and Order**.  In addition, the initial pretrial conference is reinstated and ADJOURNED to **October 15, 2020**, at **4:00 p.m.** The conference will be governed by the Court's Order of March 18, 2019, and the parties should prepare accordingly, including by submitting a joint status letter and proposed case management plan no later than the Thursday prior to that conference.  *See* ECF No. 3, at 2-3.

The Clerk of Court is directed to terminate ECF No. 48 and to terminate all Defendants other than the City of New York as parties.

SO ORDERED.

Dated: September 11, 2020
      New York, New York

                                JESSE M. FURMAN
                             United States District Judge