UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                         :

MICHAEL NIGRO,                             :

                         :

                  Plaintiff,       :

                         :          19-CV-2369 (JMF)

        -v-                    :

                         :      <u>MEMORANDUM OPINION</u>

THE CITY OF NEW YORK et al.,     :        <u>AND ORDER</u>

                         :

                  Defendants.    :

                         :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this case, Plaintiff Michael Nigro, a professional photographer, journalist, and filmmaker, brought claims against the City of New York (the "City") and five officers from the New York City Police Department ("NYPD"), relating to his arrest during a protest against then-presidential candidate Donald J. Trump on March 19, 2016.  On September 11, 2020, the Court issued an Opinion and Order, familiarity with which is presumed, dismissing all of Nigro's claims save one: a failure-to-train claim against the City of New York.  *See Nigro v. City of New York*, No. 19-CV-2369 (JMF), 2020 WL 5503539 (S.D.N.Y. Sept. 11, 2020) (ECF No. 60).  Both sides now move for reconsideration.  In particular, Nigro moves for reconsideration of the dismissal of his claim for the denial of the right to a fair trial, *see* ECF No. 64; and the City moves for reconsideration of the one claim that survived, *see* ECF No. 62.  For the following reasons, the Court denies both motions for reconsideration.

<b>LEGAL STANDARDS</b>

      Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost

motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012).  "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. Rather, the standard for granting a . . . motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks, citations, and alterations omitted).  Thus, "the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks omitted).  Ultimately, "a district court has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

## DISCUSSION

Measured against these stringent standards, both motions for reconsideration fall short.

### A.  The City's Motion

The Court ruled that, in light of the Supreme Court's recent decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), Nigro plausibly alleges that he was subjected to a retaliatory arrest in violation of the First Amendment, but dismissed the claim against the named individual Defendant based on qualified immunity.  *See Nigro*, 2020 WL 5503539, at *3-4.  By contrast, the Court concluded that Nigro's failure-to-train claim against the City survived because "qualified immunity does not extend to municipalities."  *Id.* at *5.  The City now asks the Court

to reconsider that ruling for three reasons, none of which is availing.  First, the City contends that Nigro's failure-to-train claim is premised solely on his Fourth Amendment false arrest claim, not on his First Amendment retaliatory arrest claim.  *See* ECF No. 63 ("Defs.' Mem."), at 5.  The City, however, is incorrect that "the wording of [Nigro's] theory . . . [makes] no mention of any engagement in First Amendment activity," *id.*; Nigro explicitly alleges that his "false arrest would not have occurred but for the deliberate decision made by the City of New York not to properly train NYPD officers on the *First Amendment* rights of media, including photographers," ECF No. 43 ("SAC"), ¶ 10 (emphasis added).  Not only does the Complaint cite the First Amendment explicitly, but the reference to "media" strongly supports an inference of First Amendment-protected activity.  As for the City's contention that Nigro's failure-to-train theory "leave[s] out any mention of 'retaliation,'" Defs.' Mem. 5, it is well established that "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009).  Magic words such as "retaliation" are thus not required. *See, e.g.*, *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, No. 00-CV-3367 (AGS), 2001 WL 1607039, at *11 (S.D.N.Y. Dec. 17, 2001).

The City next argues that the Court misapplied *Nieves*, which held that probable cause does not necessarily defeat a retaliatory arrest claim where the conduct at issue "is endemic but rarely results in arrest," explicitly citing "jaywalking" as an example.  139 S. Ct. at 1727.  In support of that argument, the City points out that Nigro was arrested for violating N.Y. Veh. & Traf. Law § 1156(a), *see* ECF No. 55-1, which prohibits "walking along and upon . . . [a] roadway" where an adjacent sidewalk "may be used with safety."  Jaywalking, the City insists, is prohibited not by Section 1156(a), but by Section 1152, which requires "pedestrian[s] crossing a

roadway" outside a crosswalk to "yield the right of way to all vehicles" and generally prohibits "cross[ing] a roadway intersection diagonally."  N.Y. Veh. & Traf. Law § 1152.  But any distinction between these sections is immaterial.  There is no reason to believe that the Supreme Court used the term "jaywalking" in *Nieves* to refer solely to the act of improperly crossing a roadway, as opposed to the act of improperly walking in the roadway.  More to the point, *Nieves* used jaywalking as merely an illustrative example, and the City does not argue (let alone show) that violations of Section 1156(a) result in arrest any more frequently than violations of Section 1152, which is the critical inquiry.  *See* 139 S. Ct. at 1727.  Moreover, Nigro invoked *Nieves*'s reference to "jaywalking" in his opposition to Defendants' motion to dismiss, *see* ECF No. 54 ("Pl.'s MTD Mem."), at 12-13, yet the City did not in its reply brief make the argument it seeks to make now, *see* ECF No. 56 ("Defs.' MTD Reply").  Even if it had merit, therefore, the argument is forfeited.  *See Analytical Surveys*, 684 F.3d at 52.  So too are the City's related arguments that probable cause for another offense would preclude application of the *Nieves* exception and that the *Nieves* exception generally does not support municipal liability.  *Compare* Defs.' Mem. 9-12 *with* Defs.' MTD Reply.

Finally, the City's contention that Nigro fails to adequately allege deliberate indifference and causation simply rehashes the same points Defendants made in their memorandum in support of the motion to dismiss, *see* Defs.' Mem. 13-16; ECF No. 50 ("Defs.' MTD Mem."), at 22-25, which the Court already rejected, *see Nigro*, 2020 WL 5503539, at *6.  As such, it is not a valid basis for reconsideration.  *See Analytical Surveys*, 684 F.3d at 52.

## B.  Nigro's Motion

Nigro's motion with respect to the Court's dismissal of the fair trial claim is somewhat more colorable, but it too falls short.  To support a claim for denial of the right to a fair trial, a

4

plaintiff must establish, among other things, that the fabricated evidence "[wa]s likely to influence a jury's verdict," *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016), which "is properly understood to require a showing of the materiality of the false information presented," *Garnett v. Undercover Officer C0039*, No. 13-CV-7083 (GHW), 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265.  Here, Nigro alleges that Defendants falsely (1) "fail[ed] to identify the Plaintiff as working press and [a] professional photographer"; (2) described the location of the arrest; and (3) stated that NYPD Officer Joseph Aniano saw Nigro enter the street, walk past metal barricades, and block vehicular traffic.  SAC ¶¶ 246-50.  Notably, however, the Complaint does not address the relationship between these statements and any of the charges against Nigro.  *See id.* ¶¶ 243-52.  Thus, in support of their motion to dismiss, Defendants argued that none of the allegedly false statements were material. *See* Defs.' MTD Mem. 19-20.  Nigro responded in his opposition memorandum that the statements were "central to whether the charges against him *for standing in the middle of a six-lane street* were valid."  Pl.'s MTD Mem. 20 (emphasis added) (internal quotation marks and citation omitted).  Because Nigro's own photograph revealed that he had done exactly that, *see* SAC ¶ 51, the Court dismissed the fair trial claim on the ground that the allegedly false statements would not likely influence a jury's verdict.

Nigro's motion is well taken insofar as the Court could have done a better job of explaining that the lack of a plausible allegation of materiality was the basis for dismissal of the claim.  That is, the Court somewhat inartfully stated that Nigro's claim failed because his "own photographs reveal that there was probable cause for his arrest and prosecution — at least for jaywalking, if not for obstructing vehicle traffic," 2020 WL 5503539, at *5, thereby suggesting that it was the presence of probable cause, not the lack of materiality, that defeated the fair trial

claim.  As Nigro correctly notes, that is not a valid basis for dismissal, as the existence of

probable cause is not a defense to a fair trial claim.  ECF No. 65 ("Pl.'s Mem."), at 6 (citing

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Thus, the Court clarifies:

The fatal defect in Nigro's claim is not the existence of probable cause per se, but rather its

factual predicate — namely that, Nigro's allegations to the contrary notwithstanding, he

indisputably did stand in the middle of the roadway.[1]  To be sure, "[n]o arrest, no matter how

lawful or objectively reasonable, gives an arresting officer or his fellow officers license to

deliberately manufacture false evidence against an arrestee."  *Ricciuti*, 124 F.3d at 130.

Nevertheless, the alleged manufacture of false evidence alone — while undoubtedly a source of

grave concern for the justice system, *see id.* at 125 — does not give rise to a Section 1983 fair

trial claim unless the fabricated evidence was material.  *See, e.g.*, *Morse v. Fusto*, 804 F.3d 538,

547-48 (2d Cir. 2015).

Nigro's motion is less well taken to the extent he argues that the allegedly false

statements *were* material to the charge against him for disorderly conduct for one simple reason:

He failed to advance that argument in opposition to Defendants' motion to dismiss.  *See* Pl.'s

Mem. 5, 7-8.  For example, Nigro notes that "[d]isorderly conduct requires a real and immediate

and substantial blockage of traffic."  *Id.* at 8 (citing cases).  Thus, Nigro contends that a

reasonable jury considering a disorderly conduct charge against Nigro could have been

influenced by the allegedly false statement that he was blocking vehicular traffic.  *Id.* at 7; *see*

*also* SAC ¶ 50.  But Nigro did not press this argument in his opposition to Defendants' motion to

---

[1]     For this reason, nothing in *Ekukpe v. Santiago*, 823 F. App'x 25 (2d Cir. 2020) (summary order), invoked by Nigro, *see* Pl.'s Mem. 2-3, casts doubt on the dismissal either.  That is, the Court's ruling did not rest on the premise that Defendants' allegedly false statements would not likely *reach* a jury had the criminal case against Nigro proceeded to trial.  Instead, it rested on the premise that the statements would not *influence* a jury.

dismiss.  Instead, he expressly framed the materiality of the statements around "charges . . . for standing in the . . . street."  Pl.'s MTD Mem. 20 (internal quotation marks omitted).  Regardless of how persuasive Nigro's "new theor[y]" may be, therefore, he forfeited it.  *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks omitted).  Put differently, a motion for reconsideration is not an appropriate vehicle by which to consider it.  *See id.*

      Finally, and in any event, reconsideration of the Court's dismissal of the fair trial claim is unwarranted for an independent reason: Upon reflection, the Court agrees with those courts that have held, following *McDonough v. Smith*, 139 S. Ct. 2149 (2019), that a fair trial claim requires a plaintiff to plead and prove "favorable termination" and that a plaintiff who was granted an adjournment in contemplation of dismissal ("ACD") cannot do so, at least where, as here, the "claim challenges the very evidence that supported the initiation of criminal proceedings against him."  *Corso v. Calle-Palomeque*, No. 17-CV-6096 (NRB), 2020 WL 2731969, at *7 (S.D.N.Y. May 26, 2020); *see, e.g.*, *Maradiaga v. City of New York*, No. 16-CV-8325 (GBD), 2020 WL 5849465, at *5-6 (S.D.N.Y. Oct. 1, 2020); *Gondola v. City of New York*, No. 16-CV-369 (AMD) (SJB), 2020 WL 1433874, at *2-6 (E.D.N.Y. Mar. 24, 2020); *Smalls v. Collins*, No. 14-CV-02326 (CBA) (RML), 2020 WL 2563393, at *3-6 (E.D.N.Y. Mar. 16, 2020); *Daniels v. Taylor*, 443 F. Supp. 3d 471, 476-80 (S.D.N.Y. 2020); *Miller v. Terrillion*, 436 F. Supp. 3d 598, 601-06 (E.D.N.Y. 2020).  In its September 11, 2020 Opinion and Order, the Court declined to reach whether Nigro's ACD barred his claim, noting that district courts in this Circuit were divided on the issue.  *See* 2020 WL 5503539, at *5 (citing *Simon v. City of New York*, No. 16-CV-1017 (NGG) (RML), 2020 WL 1323114, at *5 (S.D.N.Y. Mar. 19, 2020), and *Daniels*, 443 F. Supp. 3d at 479).  Prompted by Nigro's motion for reconsideration, however, the Court has now analyzed the issue and surveyed the case law in the Circuit.  Consistent with the majority of

decisions on the issue within the Circuit, and substantially for the reasons set forth in the persuasive opinions by Judge Vitaliano in *Miller* and Judge Abrams in *Daniels*, the Court concludes that Nigro's ACD does indeed bar his fair trial claim. Thus, even if his other arguments had merit, reconsideration would still not be warranted.

## CONCLUSION

For the foregoing reasons, each side's motion for reconsideration is **DENIED**. Per the Court's Order of September 30, 2020, ECF No. 67, the City shall file its Answer no later than **two weeks** from the date of this Memorandum Opinion and Order. Additionally, the initial pretrial conference is REINSTATED and scheduled for **January 14, 2021**, at **3:00 p.m.** The conference will be governed by the Court's Order of March 18, 2019, and the parties should prepare accordingly, including by submitting a joint status letter and proposed Case Management Plan no later than the Thursday prior to that conference. *See* ECF No. 3.

The Clerk of Court is directed to terminate ECF Nos. 62 and 64.

Dated: December 22, 2020
     New York, New York

JESSE M. FURMAN
United States District Judge

8